UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| *Plaintiff*    ) | |
| ) | |
| v.    ) | Civil No. 04-223-P-C |
| ) | |
| ARMAND VEILLEUX, et al.,    ) | |
| ) | |
| *Defendants*    ) | |

### RECOMMENDED DECISION ON PLAINTIFF'S MOTION
### FOR DEFAULT JUDGMENT AND DEFENDANT DUCHETTE'S
### MOTION FOR SUMMARY JUDGMENT

In this action in which the plaintiff, the United States of America ("United States"), seeks to foreclose federal tax liens upon certain real property in Turner, Maine, *see* Amended Complaint ("Amended Complaint") (Docket No. 22), the United States moves for entry of a default judgment against defendants Fleet Bank of Maine ("Fleet Bank") and Armand Veilleux, *see* Motion for Entry of Default Judgment Against Fleet Bank of Maine and Armand Veilleux ("Plaintiff's Default-Judgment Motion") (Docket No. 45), and defendant Lucille Duchette moves for summary judgment with respect to the complaint of the United States against her, as well as her cross-claim in which she seeks a declaratory judgment confirming her title to certain disputed property, *see* Motion for Summary Judgment ("Duchette S/J Motion") (Docket No. 49); Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Duchette S/J Memo") (Docket No. 49); Answer and Cross Claim of Defendant Lucille Duchette ("Duchette Answer/Cross-Claim") (Docket No. 35).  For the reasons that

follow, I recommend that the court grant the United States' motion for default judgment and deny that of Duchette for summary judgment.

## I. Motion of United States for Default Judgment

The United States moved for entry of default against Fleet Bank and Veilleux on May 25, 2005; the Clerk's Office entered the requested default on June 16, 2005. *See* United States of America's Request for Entry of Default ("Default Request") (Docket No. 42); Clerk's Entry of Default (Docket No. 43).

"There is no question that, default having been entered, each of plaintiff's allegations of fact must be taken as true and each of its claims must be considered established as a matter of law." *In re The Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) (citation and internal punctuation omitted). Relevant allegations of the Amended Complaint, which are taken as true, are as follows:

1. Veilleux, formerly of Lewiston, Maine, is currently in the custody of the Attorney General of the United States and resides at the Federal Correctional Institution in Fort Dix, New Jersey. Amended Complaint ¶ 4.

2. Fleet Bank, located at 75 State Street in Boston, Massachusetts, may claim an interest in the real property upon which the United States seeks to foreclose its tax liens. *Id*. ¶ 7.

3. On April 17, 1989 the United States assessed a civil penalty against Veilleux in the amount of $120,273.05, pursuant to the provisions of 26 U.S.C. §§ 6672 and 6601, having first determined that Veilleux was a person required to collect, truthfully account for and pay over to the United States the income and Federal Insurance Contributions Act ("FICA") taxes withheld from wages paid to the employees of Reliable Aluminum Home Improvement Center, Inc., with a usual place of business in Auburn, Maine, during the four quarters of 1987 and the first and second quarters of 1988, and that Veilleux willfully failed to do so. *Id*. ¶ 11.

4. Upon assessment on April 17, 1989 of the liabilities described above, a lien arose in favor of the United States, pursuant to 26 U.S.C. §§ 6321 and 6322, against all property and rights to property of Veilleux, including real property owned by Veilleux in the Town of Turner, County of Androscoggin, State of Maine (the "Property"). *Id*. ¶ 13.

5. On August 16, 1989 the United States filed a Notice of Federal Tax Lien Under Internal Revenue Laws for Veilleux's civil-penalty liabilities in the amount of $120,273.05 in the Androscoggin Registry of Deeds ("Androscoggin Registry") at Book 2449, Page 261. *Id*. ¶ 16.

6. A default judgment was entered by the United States District Court for the District of Maine (in Civil No. 99-124-P-C) on July 14, 1999 against Veilleux for his outstanding assessed federal tax liabilities in the amount of $68,142.07 plus interest as provided by 26 U.S.C. § 6621 and additions accruing after June 22, 1998. *Id*. ¶ 17.

7. To the extent that Veilleux is the owner of the Property, the United States' federal tax liens described above attach to the Property. *Id*. ¶ 22. The United States' federal tax liens described above are entitled to priority over any other claims to the Property. *Id*. ¶ 23.

As a result of entry of default, the following claims of the United States are taken as established with respect to Fleet Bank and Veilleux:

1. That the federal tax liens of the United States on the Property are superior to any claims of Fleet Bank and Veilleux. *Id*. at 9(B).

2. That upon any judicial sale of the Property, it will be sold free and clear of any right, title, lien, claim or interest of Fleet Bank or Veilleux. *Id*. at 9(D).

The United States now moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b), which provides in relevant part: "[T]he party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent

3

person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein." Fed. R. Civ. P. 55(b)(2).

Inasmuch as the United States has shown that (i) Veilleux was personally served with the Summons and Complaint in this action on January 7, 2005, *see* Declaration of Barry E. Reiferson in Support of the United States of America's Request for Entry of Default ("Reiferson Decl."), attached to Request for Default, ¶ 4, (ii) Fleet Bank was served with the Summons and Complaint via electronic facsimile, and Roxanne Gorham, Bank Manager, Fleet Bank of Maine, acknowledged service on December 1, 2004, *id*. ¶ 5, (iii) the United States filed its Amended Complaint on March 25, 2005 and served it upon Fleet Bank and Veilleux by first-class mail on that date, *id*. ¶ 8, (iv) no responsive pleading has to date been filed in this action by either Fleet Bank or Veilleux, *see id. ¶ 9; see also generally* Docket, and (v) neither Fleet Bank nor Veilleux is known or believed to be an infant or an incompetent person or to be in the military service within the purview of the Servicemembers Civil Relief Act, 50 App. U.S.C. § 501, Reiferson Decl. ¶ 10, the United States is entitled to the entry of default judgment pursuant to Rule 55(b)(2).

I therefore recommend that the court grant the motion of the United States for default judgment against Fleet Bank and Veilleux as prayed for, *see* proposed Default Judgment order, attached to Plaintiff's Default-Judgment Motion, ordering, adjudging and decreeing that defendants Fleet Bank of Maine and Armand Veilleux have no interest in the property upon which the United States seeks to foreclose its tax liens in this case.

## II. Motion of Duchette for Summary Judgment

I next turn to defendant Duchette's motion for summary judgment with respect to the claim of the United States against her and her cross-claim, determining for the reasons that follow that it should be denied.

### A.  Summary Judgment Standards

### 1.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'"  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## 2. Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at

their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

### B. Factual Context

Duchette's statement of material facts,[1] credited to the extent either admitted or supported by record citations in accordance with Local Rule 56 and viewed in the light most favorable to the United States as nonmovant, reveals the following relevant to this recommended decision:[2]

Duchette is the record owner of a piece of property located in Turner, County of Androscoggin, State of Maine, which is more particularly described in a deed of distribution recorded in the Androscoggin Registry at Book 2608, Page 264, and dated September 26, 1990. Amended Statement of Material Facts Not in Dispute ("Duchette Amended SMF") (Docket No. 60) ¶ 1; Plaintiff's Opposing SMF ¶ 1.[3] On July 13, 1946 Duchette's half-brother and predecessor in title, Ronaldo Duchette, purchased the above-described property from George Gauthier. *Id*. ¶ 2.[4] This lot is directly adjacent to a parcel that is commonly called the "Duchette Lot," which is more particularly

---

[1] I omit the United States' additional facts, *see* Additional Facts, commencing at page 3 of Statement of Material Facts ("Plaintiff's Opposing SMF") (Docket No. 55), sustaining Duchette's objections that the United States fails to provide supporting citations as required by Local Rule 56(c) & (f), *see* Reply Statement of Material Facts Not in Dispute and Response to Request To Strike ("Duchette Reply SMF") (Docket No. 58) ¶¶ 1-5.

[2] As noted above, Local Rule 56 requires a party responding to a statement of material facts to admit, deny or qualify the underlying statement. *See* Loc. R. 56(c)-(d). As a general rule, the concept of "qualification" presupposes that the underlying statement is accurate but in some manner incomplete, perhaps even misleading, in the absence of additional information. Accordingly, except to the extent the United States, in qualifying a statement, has expressly controverted all or a portion of it, I have deemed it admitted.

[3] I granted Duchette's motion to amend her statement of material facts to correct certain clerical errors. *See* Consented To Motion To Amend Statement of Material Facts and To Temporarily Submit a[n] Unsworn Affidavit (Docket No. 56); Order (Docket No. 59). The amended statement of material facts supersedes that filed as Statement of Material Facts Not in Dispute (Docket No. 50).

[4] The United States denies this statement, *see* Plaintiff's Opposing SMF ¶ 2; however, the basis for its denial was addressed when Duchette filed her amended statement of material facts. My recitation takes into account the United States' further assertion that Ronaldo Duchette appeared to have purchased only one parcel from Gauthier, not two. *See id.*

described in a deed from the Town of Turner to Lucille Duchette recorded in the Androscoggin Registry at Book 3484, Page 343, and dated July 24, 1995. *Id.* ¶ 3.[5]

In 1950 Duchette's father built a large portion of his house on part of the adjacent Duchette Lot and moved into the home, which is confirmed by the Tax Records. *Id.* ¶ 4.[6] The Duchette family resided in the home and possessed the Duchette lot openly, notoriously, continuously and exclusively from 1950 until Ronaldo Duchette's death on March 16, 1976. Duchette Amended SMF ¶ 5; Affidavit of Lucille Duchette ("Duchette Aff.") (Docket No. 49) ¶ 11.[7] On May 15, 1976 Ronaldo Duchette's widow and sole beneficiary of his will, Gloria Duchette, conveyed the triangular piece on which a corner of the house on the Duchette Lot is located to Cecile Duchette, by deed recorded in the Androscoggin Registry at Book 1204, Page 241. Duchette Amended SMF ¶ 6; Duchette Aff. ¶ 8.[8]

Cecile Duchette passed away on March 20, 1988 and left the triangular piece of land on which a corner of the house on the Duchette Lot is located to her daughter, Lucille Duchette, by deed dated September 26, 1990, recorded in the Androscoggin Registry at Book 2608, Page 265. Duchette Amended SMF ¶ 7; Affidavit of Daniel D'Auteuil, Jr. To Support the Motion for Summary Judgment as to Title Search ("D'Auteuil Aff.") (Docket No. 49) ¶ 4(d) & Exh. C thereto.[9]

---

[5] My recitation reflects the United States' qualification.

[6] The point made by the United States in qualifying this statement, *see* Plaintiff's Opposing SMF ¶ 4, was addressed by Duchette when she filed her amended statement of material facts.

[7] The United States denies this statement, *see* Plaintiff's Opposing SMF ¶ 5; however, the basis for its denial was addressed when Duchette filed her amended statement of material facts. I omit the phrase "and under a claim of right" from Duchette's statement, *see* Duchette Amended SMF ¶ 5, sustaining the United States' objection that Duchette is without personal knowledge of, and is not competent to testify as to, Ronaldo Duchette's claim of right, *see* Plaintiff's Opposing SMF ¶ 5. While Duchette avers that all facts in her affidavit are based on personal knowledge, *see* Duchette Aff. ¶ 14, she elucidates no basis for such knowledge, *see generally id*. She protests the United States' objection to paragraph 5 and its identical objections to other paragraphs of her statement of material facts; however, she makes no convincing counter-argument and tenders no evidence evincing such knowledge, *see* Duchette Reply SMF at 3-5; Supplemental Affidavit of Lucille Duchette in Support of the Motion for Summary Judgment, attached to Reply to Plaintiff's Opposition to Summary Judgment ("Duchette S/J Reply") (Docket No. 57).

[8] I omit the phrase "believing the deed to include the Duchette Lot," Duchette Amended SMF ¶ 6, which, as the United States points out, *see* Plaintiff's Opposing SMF ¶ 6, is not supported by the citations given.

[9] I omit the balance of paragraph 7, sustaining the United States' objections that it contains conclusions of law and that Duchette is without personal knowledge of, and is not competent to testify as to, Cecile Duchette's belief. *See* Plaintiff's Opposing SMF ¶ 7.

The Town of Turner purportedly took title to Veilleux's property (including the Duchette Lot) pursuant to 36 M.R.S.A. § 943 by virtue of foreclosures of tax liens recorded in the Androscoggin Registry July 3, 1991 at Book 2709, Page 106, July 22, 1992 at Book 2887, Page 60, March 3, 1993 at Book 3000, Page 136, August 26, 1993 at Book 3107, Page 278 and June 30, 1994 at Book 3290, Page 96. Duchette Amended SMF ¶ 8; Plaintiff's Opposing SMF ¶ 8.

Duchette has actually, openly, hostilely and notoriously occupied the Duchette Lot for a period of time under a claim of right, continuous and exclusive. Duchette Amended SMF ¶ 10; Duchette Aff. ¶ 11.[10] The Town of Turner issued a deed to Lucille Duchette confirming her fee simple interest in the Duchette Lot, recorded in the Androscoggin Registry at Book 3484, Page 343, and dated July 24, 1995. Duchette Amended SMF ¶ 12; Duchette Aff. ¶ 13; D'Auteuil Aff. ¶ 4(f).[11] The United States purportedly placed tax liens on all of Veilleux's property, including the Duchette Lot, pursuant to 26 U.S.C. §§ 6321 and 6322 on April 17, 1989. Duchette Amended SMF ¶ 13; Amended Complaint ¶¶ 13, 15.[12]

### C. Analysis

As the First Circuit has explained:

> A federal tax lien is wholly a creature of federal law. It is one of the formidable arsenal of collection tools necessary to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting. Accordingly, the effects, priority, enforcement, and extinguishment of a tax lien are federal concerns. The

---

[10] I omit paragraph 9, *see* Duchette Amended SMF ¶ 9, which the United States successfully controverts, *see* Plaintiff's Opposing SMF ¶ 9; Exh. D to D'Auteuil Aff.; Exh. A to Declaration of Barry E. Reiferson in Support of the United States of America's Objection to Motion for Summary Judgment (Docket No. 54). I also omit portions of paragraph 10 in which Duchette refers to her "predecessors in title," sustaining the United States' objection that she is without personal knowledge of, and is not competent to testify as to, other persons' claims of rights to possess real property.

[11] I omit paragraph 11, *see* Duchette Amended SMF ¶ 11, sustaining the United States' objection that Duchette is without personal knowledge of, and is not competent to testify as to, the intent of others, *see* Plaintiff's Opposing SMF ¶ 11, and acknowledging that the United States successfully controverts the statement to the extent it pertains to Duchette, *see id.*; Exh. D to D'Auteuil Aff. I omit portions of paragraph 12, *see* Duchette Amended SMF ¶ 12, that the United States successfully controverts, *see* Plaintiff's Opposing SMF ¶ 12; Exh. D to D'Auteuil Aff.

[12] I omit portions of paragraph 13, *see* Duchette Amended SMF ¶ 13, that are neither admitted by the United States, *see* Plaintiff's Opposing SMF ¶ 13, nor supported by the citations given.

> Internal Revenue Code creates no property rights but merely attaches consequences, federally defined, to rights created under state law. For this reason the court must first look to state law to ascertain the existence and nature of the property rights against which a tax lien has been asserted. Once these rights have been determined, however, federal law governs whether these rights are rights to property to which a tax lien may attach. Once the tax lien attaches, the effects of that lien are also governed by federal law.

*Rodriguez v. Escambron Dev. Corp.*, 740 F.2d 92, 96-97 (1st Cir. 1984) (citations and internal quotation marks omitted).

Duchette initially moved for summary judgment with respect to her claim of title to the Duchette Lot on the ground that she and her predecessors in title met the requisites of Maine common-law and statutory adverse possession, pursuant to which an adverse possessor "must prove by a preponderance of the evidence possession for a 20-year period that is actual, open, visible, notorious, hostile, under a claim of right, continuous, and exclusive." Duchette S/J Memo at 3 (quoting *Eaton v. Town of Wells*, 760 A.2d 232, 243 (Me. 2000); *see also id*. at 4-5 (citing 14 M.R.S.A. § 801).

In her reply memorandum, Duchette relied largely on a new theory: that this is a case of mistaken boundary, as a result of which, pursuant to 14 M.R.S.A. §§ 801 and 810-A, no intent to possess another's property need be shown. *See* Duchette S/J Reply at 3-5. In response, the United States filed a motion to strike Duchette's reply memorandum or, in the alternative, to file a surreply. *See* United States of America's Motion To Strike Reply to Plaintiff's Opposition to Summary Judgment, or, in the Alternative, for Leave To File Surreply (Docket Nos. 63-64). I denied the motion to strike Duchette's reply brief but granted in part the motion to file a surreply, directing that it be limited to addressing the merits of the new theory raised by Duchette. *See* Order (Docket No. 78). The surreply was duly filed, *see* United States of America's Surreply Regarding 14 M.R.S.A. §§ 801 and 810-A ("Plaintiff's S/J Surreply") (Docket No. 80), and with the benefit of that document I now address the merits of both of Duchette's theories.

Turning to the original theory, I agree with the United States that Duchette falls short of proving her entitlement to summary judgment inasmuch as she fails to adduce cognizable evidence of "claim of right" for the requisite period. *See* Objection to Motion for Summary Judgment ("Plaintiff's S/J Opposition") (Docket No. 54) at 4-5. Duchette posits that her family met all elements of common-law and statutory adverse possession, including "claim of right," for a continuous period from 1950 onward, as a result of which title vested in Ronaldo Duchette by 1970, well prior to the attachment of the United States' tax liens in 1989. *See* Duchette S/J Memo at 4. As the Law Court has clarified, "The claim of right must be an intent to claim the land as its own, and not in recognition of or subordination to the record title owner." *Eaton*, 760 A.2d at 243 (citation and internal punctuation omitted). Duchette adduces no cognizable evidence bearing on the intent of her relatives with respect to the Duchette Lot; I sustained the United States' objections to her statements on that subject on the basis of her lack of personal knowledge of their intent and/or the conclusory (rather than factual) nature of relevant statements in her affidavit.

As the United States points out, *see* Plaintiff's S/J Opposition at 4, in *Richards Realty Co. v. Town of Castle Hill*, 406 A.2d 412 (Me. 1979), the Law Court reversed summary judgment in favor of a town that relied on affidavit language substantially similar to that of Duchette, purportedly made by the town clerk on personal knowledge, to establish ownership of certain lands, *see Richards*, 406 A.2d at 412 (town clerk had sworn, on his personal knowledge, that town had been "in actual possession of said property, claiming to hold it by adverse, open, peaceable, notorious and exclusive possession"). The Law Court observed:

> Even if we assume that these critical words in the affidavit signify conclusions not purely of law but rather of law mixed with fact, the determinative point is that, undeniably, the words have ultimately conclusory import. Thus, were the Town Clerk testifying as a witness at trial, his use of these same words could not be held to be testimony as to *facts* admissible in evidence. More particularly is this so here, where the subsidiary facts involved in the ultimate conclusions span more than forty years . .

> ., and the affidavit states no circumstances that show *affirmatively* that the affiant, the current Town Clerk, could have the kind of continuing personal knowledge of such facts over a period of forty years that would render him competent to testify as to their existence.

*Id*. at 413 (internal punctuation omitted) (emphasis in original); *see also, e.g., Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir. 2000) ("To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient.") (citation and internal quotation marks omitted).

Inasmuch as Duchette adduces no cognizable evidence proving an essential element of adverse possession under Maine common and statutory law – "claim of right" – her bid for summary judgment as articulated in her original memorandum of law falls short.

Turning to the second theory, Duchette relies on a statutory provision obviating the need, in mistaken-boundary cases, to prove intent to claim the land of another (in other words, "claim of right") to establish adverse possession. *See* Duchette S/J Reply at 4-5; *Striefel v. Charles-Keyt-Leaman P'ship*, 733 A.2d 984, 992 n.9 (Me. 1999); 14 M.R.S.A. § 810-A.[13] As the government points out, *see* Plaintiff's S/J Surreply at 2-5, the problem for Duchette is that the statute upon which she relies was enacted in 1993, *see* Historical and Statutory Notes to 14 M.R.S.A. § 810-A – subsequent to attachment of the federal tax liens in question in 1989.

As noted above, priority of a federal tax lien is a question of federal law. Even though, as a matter of state law, 14 M.R.S.A. § 810-A provides a retroactive remedy, *see id.*, its invocation cannot,

---

[13] Although the statute purportedly obviates the need to prove "hostility" and retains the need to prove "claim of right," *see* 14 M.R.S.A. § 810-A, the Law Court has recognized that the Legislature meant to eradicate the necessity to prove "claim of right." *See Striefel*, 733 A.2d at 992 n.9 ("'Hostile' and 'claim of right' are terms of art. The Legislature, in its purported attempt to 'overrule' the Maine rule, inartfully provided that a mistake as to the location of the true boundary line does not preclude a finding of *hostility* if the adverse claimant takes possession of the land, *inter alia*, under a *claim of right*. The so-called Maine rule, however, primarily pertains to the *claim of right* requirement, rather than the requirement of *hostility*.") (citation omitted) (emphasis in original).

12

as a matter of federal law, trump a federal tax lien perfected prior to its enactment, *see, e.g., United States ex rel. IRS v. McDermott*, 507 U.S. 447, 449 (1993) ("Absent provision to the contrary, priority for purposes of federal [tax-lien] law is governed by the common-law principle that the first in time is the first in right. . . . Our cases deem a competing state lien to be in existence for 'first in time' purposes only when it has been 'perfected' in the sense that the identity of the lienor, the property subject to the lien, and the amount of the lien are established.") (citations and internal quotation marks omitted) (emphasis omitted); *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000) ("Even if Michigan law allows the doctrine of 'relation back' to give the beneficiary of a constructive trust priority over private intervening interests, this would not be determinative as to the IRS. The priority of a federal tax lien against competing claims is governed by federal law. Federal law, however, makes no provision for the subordination of a tax lien through the use of the 'relation back' doctrine.") (citations omitted); *Rodriguez*, 740 F.2d at 98 ("If the plaintiffs' interpretation of Puerto Rican law is correct, the legal fiction of retroactive prescription may give their ownership rights priority over liens created under state law. But the priority of the tax lien is governed by federal law, and federal law makes no provision for subordination by use of a legal fiction."); *Hilco Prop. Servs., Inc. v. United States*, 929 F. Supp. 526, 548 (D.N.H. 1996) ("[E]ven though state law determines what property a taxpayer owns that may be subject to a tax lien, once the lien attaches, state law may not be invoked in any manner which would diminish, subordinate, or otherwise offend the lien.").[14]

Duchette accordingly falls short of demonstrating entitlement to summary judgment via her second theory, as well.

---

[14] As the United States points out, *see* Plaintiff's S/J Surreply at 2-3, there are statutory exceptions to the default federal-tax-lien principle of "first in time, first in right"; however, a claim of ownership via adverse possession is not among them, *see* 26 U.S.C. § 6323(a)-(e). Thus, as the United States suggests, *Rodriguez*, in which the First Circuit rejected an attempt to "backdate" adverse possession, is controlling. *See* Plaintiff's S/J Surreply at 4-5.

13

### III.  Conclusion

For the foregoing reasons I recommend that the United States' motion for entry of default judgment against Fleet Bank of Maine and Armand Veilleux be **GRANTED,** and Lucille Duchette's motion for summary judgment be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of December, 2005.

                                              /s/ David M. Cohen
                                              David M. Cohen
                                              United States Magistrate Judge